IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WALTER COLE MCNAIR, JR., ) | Civil Action No. 3:07-3470-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JON OZMINT; ) | |
| WILLIE EAGELTON; ) | |
| WILLIAM DAVIS; ) | |
| ANNIE SELLARS; ) | |
| JOHN BURGESS; AND ) | |
| GEROME MCLEOD, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on October 18, 2007.[1] He is an inmate at the Evans Correctional Institution ("ECI") of the South Carolina Department of Corrections ("SCDC"). Defendants, all employees of SCDC at ECI. are Warden Willie Eagleton ("Eagleton), William Davis ("Davis"), Annie Sellers ("Sellers"), John Burgess ("Burgess"), and Gerome McLeod ("McLeod"). On March 6, 2008, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on March 11, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On March 31, 2008, Plaintiff filed a motion for non-suit without prejudice. Defendants filed a reply on April 16, 2007.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the court.

## FACTS

Plaintiff was accused of assault and battery of an SCDC employee with means and/or intent to kill or injure and possession of a weapon. The charges were based on an incident in which Plaintiff dashed a cup of hot coffee in Burgess's face. Plaintiff was placed in a holding cell. Davis frisked searched Plaintiff, at which time he found a three inch long piece of sharpened metal hidden in the waistband of Plaintiff's underwear. Disciplinary Hearing Officer ("DHO") Sellers presided at Plaintiff's disciplinary hearing held on September 11, 2006. Plaintiff was represented at the hearing by a counsel substitute. He was given an opportunity to make a statement, to present witnesses and evidence in his defense, and to pose questions to Lt. Davis (who testified by telephone). See Betty Woodard Aff; McLeod Incident Report, and certified Transcript of Disciplinary Hearing (Attachments to Defendants' Motion for Summary Judgment).

Plaintiff filed grievances with SCDC challenging his convictions on the disciplinary charges. SCDC issued final decisions denying the grievances. Betty Woodard Aff. and Plaintiff's Grievances. He appealed SCDC's decisions to the South Carolina Administrative Law Court ("ALC") which dismissed the appeals on the merits. Janet Williams ("Williams") Aff. and ALC Orders. He appealed the decisions to the South Carolina Court of Appeals which dismissed the appeals. Williams Aff. and Orders of the South Carolina Court of Appeals.

After Plaintiff filed his appeal to the ALC on the weapon charge, but before Plaintiff filed his appeal to the ALC on the assault charge, Plaintiff was allowed to listen to the tape of his disciplinary hearing. Williams Aff. and Brief of Appellant. Plaintiff then briefed the ALC on his claims that the tape was allegedly altered by the DHO. He also briefed the ALC on his claims that there was fabrication of evidence in the Incident Reports.

2

MOTIONS FOR PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDERS

On November 19, 2007 and January 23, 2008, Plaintiff filed motions for temporary restraining orders. He filed a motion for a preliminary injunction on December 3, 2007.

In his November 19, 2007 motion, Plaintiff requests that a temporary restraining order ("TRO") be issued to prevent the destruction of audiotapes of his September 2006 disciplinary hearing and of another disciplinary hearing that is not the subject of this action. He claims SCDC destroys audiotapes after eighteen months. In his December 3, 2007 motion, Plaintiff requests that Defendant Eagelton, law librarian Sergeant Bangura, and Mrs. Hooks (who dispenses legal supplies) abide by SCDC's rules and regulations concerning the provision of legal supplies. He appears to allege that his access to the courts is impeded because he does not receive unlimited legal supplies including paper, pens, and manila envelopes. On January 23, 2008, Plaintiff filed a motion for a TRO ex parte to prevent "any further retaliation from Sgt. Bangura." He appears to claim that his access to obtaining photocopies of documents was impeded in retaliation for his filing grievances against Sgt. Bangura.

Defendants contend that Plaintiff's November 2007 motion for a TRO (concerning cassette tapes) should be denied because they are under a duty to preserve material evidence and Plaintiff's motion involves a discovery matter. They contend that Plaintiff's motion for a preliminary injunction should be denied because it addresses matters beyond the pleadings, it seeks relief from third parties who are not parties to this action and over whom the Court lacks jurisdiction, there is no showing by Plaintiff of threatened irreparable harm or likelihood of success on the merits, and there is potential injury to Defendants and the public interest if the requested injunctive relief is granted. Defendants contend that Plaintiff's January 2008 motion for a TRO for photocopies should be denied because Plaintiff's motion addresses matters beyond the pleadings, he seeks relief from

3

a third party who is not a party to this action, Plaintiff has made no showing of threatened irreparable harm or likelihood of success on the merits, and there is a potential for injury to Defendants and the public interest if the requested relief is granted.

The undersigned construes these pleadings as motions for preliminary injunctive relief. The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's motions should be denied because Plaintiff is unlikely to be successful in the underlying dispute between the parties and is unlikely to suffer irreparable injury if interim relief is denied. There is a potential for injury to Defendants and the public interest if the requested relief (unlimited free photocopies and legal supplies) is granted. Additionally, Plaintiff's motions should be denied to the extent that they seek relief from third persons (Sgt. Bangura and Mrs. Weeks) who are not parties to this action.

As is discussed further below, it is unlikely that Plaintiff will be successful on his underlying claims. Additionally, as to the audiotapes, Defendants are already under a duty to preserve material evidence during the courts of this litigation. See Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001), citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)).

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff fails to show actual injury from his alleged denial of access to the courts. Despite his claims, he has been able to file numerous pleadings in this action with photocopied attachments. Defendants provide that in 2007 alone, Plaintiff filed seven cases in the South Carolina Administrative Law Court and appealed three decisions of the Administrative Law Judge to the South Carolina Court of Appeals.  Here, Plaintiff does not identify what documents or materials he wants photocopied or how denial of such creates an imminent threat of irreparable harm. Defendants provide that SCDC policy allows inmates to request photocopies of certain legal materials and documents to support a pleading. To prevent abuse of the policy, SCDC provides that indigent inmates are required to provide documentation of a pending lawsuit. Plaintiff admits that he already receives 100 sheets of paper, ten letter sized envelopes, and two pens a month. Correction officials are not required to afford inmates the right to unlimited legal supplies and may restrict inmates to reasonable amounts. See Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978)(inmates do not have an unlimited right to free postage, an absolute right to use a typewriter or an absolute right to have one's pleadings typed, in connection with the right of access to the courts).

## MOTION FOR SUMMARY JUDGMENT

Plaintiff claims that the issues he is attempting to litigate are "civil criminal conspiracy, malicious pr[osecu]tion, [and] denial of access to courts." Complaint at 2. His allegations appear to concern the evidence presented at his September 11, 2006 disciplinary hearing. He also claims that the cassette tapes of that hearing were altered. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff's claim is barred by 42 U.S.C. § 1997e(e); (2) Plaintiff's claim is not cognizable under § 1983 because any relief would necessarily imply the invalidity of the result of Plaintiff's disciplinary hearing; (3) Plaintiff fails to allege a violation of his due process rights as to disciplinary proceedings; (4) Plaintiff is collaterally estopped from asserting claims

6

against Defendant Ozmint in his official capacity; (5) Defendants Ozmint and Eagleton have no respondeat superior liability to Plaintiff; (6) the Eleventh Amendment bars Plaintiff's claim against Defendant Ozmint in his official capacity; (7) Defendants are entitled to qualified immunity; and (8) 18 U.S.C. § 241 and 28 U.S.C. § 1343 create no private right of action.

### 1. Mental and Emotional Distress

Plaintiff seeks monetary damages for mental and emotional distress he allegedly suffered as a result of Defendants' actions. Defendants contend that these claims are barred by 42 U.S.C. § 1997e(e) because Plaintiff may not bring a federal action for mental or emotional injury suffered while in prison custody, without a prior showing of physical injury.

To the extent that Plaintiff is seeking monetary damages for mental and emotional distress, his claims fail. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[2]

42 U.S.C. § 1997e(e).

### 2. 18 U.S.C. § 241 and 28 U.S.C. § 1343

---

[2] The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

Plaintiff seeks damages pursuant to 18 U.S.C. § 241 and 28 U.S.C. § 1343. He fails, however, to show that he has a private right of action under these statutes. Section § 1343 merely provides that district courts have original jurisdiction of civil rights actions. Section 241 is a federal criminal statute, under which only the United States can bring an action. See Cok v. Consentino, 876 F.2d 1, 2 (1st Cir. 1989). Unless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute. Shaw v. Neece, 727 F.2d 947 (10th Cir.), cert. denied, 466 U.S. 976 (1984) (damages sought for violation of 18 U.S.C. § 241 ).[3]

      3.      Disciplinary Hearings/Due Process

Plaintiff appears to allege that his constitutional rights were violated because Burgess "endorsed" a supplemental report written by McLeod although Burgess knew that another piece of evidence would contradict his whereabouts. He appears to claim that McLeod's first statement contained the names of officers which differed from those contained in Davis's statement. Plaintiff claims that the DHO (Sellers) should have questioned McLeod about the alleged discrepancy, but instead contacted Davis who testified that certain employees were listed on his report merely because they were in the area while Davis was frisk searching Plaintiff. He appears to claim that Sellers did not record Davis's phone conversation and did not put the call on speaker phone. Plaintiff claims that Sellers was biased and prejudiced. Additionally, Plaintiff claims that the tapes were altered by erasing some of his testimony. He claims that the conversation with Davis was

---

[3]To the extent that Plaintiff is requesting that this court institute criminal actions against Defendants, his claims also fail. No citizen has an enforceable right to institute a criminal prosecution. Linda R.S. v. Richard V., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); see also Lopez v. Robinson, 914 F.2d 486 (4th Cir. 1990) (prison officials entitled to qualified immunity for their actions in screening inmate requests that they be transported to court to press criminal charges).

8

added to the tape and the section containing the DHO reading McLeod's supplemental statement was altered drastically. Plaintiff alleges that McLeod stated in his original report that Plaintiff appeared to be suffering from mental health issues.

Plaintiff's allegations concerning his disciplinary proceedings and the outcome of those proceedings are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994)[4] and <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997)(<u>Heck</u> precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); <u>see</u> <u>also</u> <u>Kerr v. Orellana</u>, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under <u>Heck</u>). Plaintiff has not shown he successfully attacked any disciplinary hearing conviction. Plaintiff cannot maintain a § 1983 action, whether for restoration of good time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding. Here, the awarding of damages and/or injunctive relief to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and thus his claim is barred under <u>Heck</u> and <u>Balisok</u>

Defendants contend that even if Plaintiff's claims are not barred by 42 U.S.C. § 1997e(e) or the ruling in <u>Edwards v. Balisok</u>, Plaintiff has not alleged or shown a constitutional violation. They contend that the transcript of the hearing demonstrates that notice and counsel substitute were provided to Plaintiff, Plaintiff was provided the opportunity to present evidence, and the ALC

---

[4]The Supreme Court, in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

determinations indicate that written reasons and supporting evidence for the DHO's decision were given.

A prisoner is entitled to only a minimal standard of due process in the prison disciplinary setting. The following requirements are sufficient to satisfy this minimal standard of due process:

1. Advance written notice of the charges;

2. A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3. The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974). Due process in prison discipline decisions is satisfied if there is "some" evidence to show that the inmate committed the offense. Hill v. Superintendent, Mass. Corr. Inst., 472 U.S. 445, 455 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the board's decision. Id. at 455-56. This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. Id.; see also Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990).

Here, Plaintiff has not alleged or shown that any of the due process rights set out in Wolff were violated. Further, he has not shown that the DHO was so insufficiently impartial or was biased so as to present "a hazard of arbitrary decisionmaking." See Wolff at 571.

4. Access to the Courts

Plaintiff appears to allege that the procedures followed at his disciplinary hearing denied him access to the courts. Defendants contend that Plaintiff fails to show denial of access to the courts, as he received the process he was due at his disciplinary hearing and he was afforded extensive administrative and judicial review of the disciplinary decision.

Plaintiff fails to show that his access to the courts has been violated as he has not shown any actual injury such as the late filing of a court document or the dismissal of an otherwise meritorious claim resulting from Defendants' alleged actions. See Bounds v. Smith and Lewis v. Casey, supra. As discussed above, Plaintiff fails to show that his due process rights were violated as to his disciplinary hearing. Further, he has not alleged that he was denied administrative and judicial review of that decision.

5.  Conspiracy

Plaintiff appears to allege that Defendants conspired to deny him his constitutional rights. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. Id. To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." Id. A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Hinkle at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. Id. Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy.

6.  Supervisory Liability

Plaintiff alleges that Defendant Ozmint chose to implement a policy or custom that put one DHO in complete control of the cassette tapes and hearing evidence. He claims that

11

Defendant Eagleton failed to closely monitor the DHO.  Defendants Ozmint and Eagleton contend that they have no respondeat superior liability to Plaintiff.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff did not allege that Defendants Ozmint or Eagleton were personally responsible for any of the alleged incidents.  Further, Plaintiff has not shown that Defendants Ozmint or Eagleton were deliberately indifferent to, or tacitly authorized, any of these alleged actions or inactions.  Thus, Plaintiff cannot show that Defendants Ozmint and Eagleton are liable on a theory of respondeat superior or supervisory liability.

7.     Immunity

Defendant Ozmint contends that he is entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of Will v. Michigan Department of State

Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendant Ozmint is entitled to Eleventh Amendment immunity from monetary damages in his official capacity.

Defendants contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## MOTION FOR NON-SUIT WITHOUT PREJUDICE

On March 28, 2008, Plaintiff filed a motion for non-suit without prejudice. He appears to be asking that this action be dismissed without prejudice because his case fails in light of Edwards v. Balisok and Heck v. Humphrey, as his disciplinary charges have not been reversed. He requests, however, that this Court rule on his motion for a preliminary injunction and the Court order that Defendants turn over cassette tapes of his disciplinary hearing to prevent them from being destroyed. The undersigned construes Plaintiff's motion as a motion to voluntarily dismiss this action pursuant to Federal Rule 41(a)(2). Defendants contend that Plaintiff's motion should be denied because: (1) Plaintiff failed to adequately respond to their motion for summary judgment; (2) Plaintiff concedes in his motion for voluntary dismissal that his case fails; and (3) Defendants will be prejudiced unless Plaintiff's motion is denied.

Rule 41(a)(2) Fed. R. Civ. P. allows a court to dismiss an action, on plaintiff's motion, "upon such terms and conditions as the court deems proper."

The decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court. Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987); McCants v. Ford Motor Co., 781 F.2d 855, 857 (11th Cir. 1986); Kenrose Mfg. Co. v. Fred Whitaker Co., 512 F.2d 890, 895 (4th Cir. 1972). The purpose of Rule 41(a)(2) is to freely allow voluntary dismissals unless the parties will be unfairly prejudiced. McCants, 781 F.2d at 856; Alamance Industries, Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir. 1961), cert. denied, 368 U.S. 831 (1961). To fulfill this purpose, Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice. In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant. Davis, 819 F.2d at 1273; McCants, 781 F.2d at 856; LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976). "A plaintiff's motion under Rule 41(a)(2) for dismissal without prejudice should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986)(citation omitted). Factors that may bear on whether the defendant will suffer legal prejudice by a dismissal include, among others, (1) the plaintiff's diligence in moving for a voluntary dismissal, (2) the stage of the litigation, including the defendant's effort and expense in preparing for trial, and (3) the adequacy of the plaintiff's explanation for the need to dismiss. See, e.g., Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir.1996); Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir.1990).

Defendants would be prejudiced if Plaintiff's motion were granted. Plaintiff did not file his motion until well after discovery was completed and Defendants filed their motion for summary judgment. Defendants provide that they have expended considerable time and expense in this

15

action, including responding to eight motions by Plaintiff, obtaining copies of state court records, responding to Plaintiff's discovery requests, and preparing a motion for summary judgment.

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motions for temporary restraining orders and preliminary injunctive relief (Docs. 8, 9, and 29) be denied; Plaintiff's motion for a Non-Suit without Prejudice (Doc. 43) be denied; and Defendants' Motion for Summary Judgment (Doc. 37) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

April 28, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).